IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARCUS HARRIS,
A/K/A MARZUQ AL-HAKIM

       Plaintiff,

v.                                      CASE NO. 4:14-cv-575-RH-GRJ

FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

      This case is before the Court on Defendants Florida Department of Corrections, Julie Jones,[1] Tony Anderson, Beth Mallard, and Donald P. Moore's Motion to Dismiss. Doc. 28. Plaintiff is an inmate in the custody of the Florida Department of Corrections who is proceeding *pro se* in this 42 U.S.C. § 1983 case. While Plaintiff has not filed a response to the motion to dismiss, he has filed documents entitled "Notice of Plausible Claim for Relief," "Notice of Memorandum in Opposition to the Eleventh Amendment and Sovereign Immunity," and "Memorandum of Law in Opposition to Defendant's Assertion Immunity from Damages by Private Citizen," all of which the Court construes as a response in opposition to Defendants' motion. Doc. 31; Doc. 32; Doc. 40.

      For the reasons discussed below, the motion to dismiss is due to be granted and

---

[1] Timothy Cannon is no longer the interim Secretary of the Florida Department of Corrections. The current Secretary, Julie Jones in her official capacity should be substituted for former Secretaries Michael Crews and interim Secretary Cannon in their official capacities, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

this case is due to be dismissed.

## I. Introduction

Plaintiff may be the poster child for prisoner litigant frequent filers, having filed more than fifty (50) cases in federal court[2] and numerous cases in state court, including twenty-three (23) cases in the Florida Supreme Court alone. There is no question that Plaintiff is a "three-striker." Plaintiff concedes as much in his Second Amended Complaint, by listing *Harris v Crews*, no. 4:14-cv-358-WS-CAS (N.D. Fla. Sept. 16, 2014), a case filed in this Court in which Plaintiff's complaint was dismissed as a three striker because the Court found that Plaintiff previously had at least six cases dismissed either as frivolous or for failing to state a claim.[3]  In the normal course of events the Court would routinely dismiss this case without prejudice because Plaintiff is a three striker as provided in 28 U.S.C. § 1915(g). There is a wrinkle, however, in this case. The Plaintiff filed his civil rights complaint in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida and thereafter the Defendants timely removed the case to federal court. After the case was removed to federal court the Court directed Plaintiff to resubmit the complaint on the Court's civil rights complaint form. Plaintiff then resubmitted the complaint on the Court's form.  Plaintiff did not disclose on the resubmitted complaint form approximately fifty-two of his previously filed federal cases. Consequently, Defendants have moved to dismiss the amended complaint, *inter*

---

[2] *See,* identifying case numbers listed by the Defendants in Doc. 28, pp. 3-4.

[3] The Court identified six cases from the Middle District of Florida that were dismissed: Case nos. 8:00cv391, 8:96cv2000, 8:96cv1654, 8:95cv1908, 8:95cv1472, 8:94cv697. These cases were further identified in case no. 8:13cv446 in the Middle District of Florida.

*alia,* on the grounds that Plaintiff's amended complaint should be dismissed because he knowingly failed to disclose a majority of his prior cases, which constitutes an abuse of the judicial process. Again, under normal circumstances, where an inmate under penalty of perjury fails to list his prior federal cases, as required by the civil rights complaint form, the Court routinely would dismiss the case.

Should the same rules and jurisprudence apply to situations, as here, where the complaint was filed in state court and then removed to federal court? The Court believes it should.  There is a compelling reason to apply the same rules to a prisoner litigant who first files a civil rights case in state court where there is concurrent jurisdiction and then the case is removed to federal court. To hold otherwise would allow prisoner litigants to make an end-run around the requirements of the PLRA and would be contrary to one of the main goals of the PLRA, which is to reduce the quantity of frivolous inmate suits.

Even if the three strikes bar was not applicable because Plaintiff filed the complaint in state court, the Complaint is still due to be dismissed as an abuse of the judicial process because Plaintiff lied under penalty of perjury by failing to disclose on the Second Amended Complaint form filed in this Court, more than 50 other federal cases Plaintiff filed.

Alternatively, as discussed below, the case is due to be dismissed because Plaintiff failed to exhaust the available administrative remedies. And even if Plaintiff had exhausted his administrative remedies his claims for monetary damages, including compensatory and punitive damages, cannot proceed and are due to be dismissed.

## II.  Plaintiff's Claim

The relevant facts, as alleged in the Second Amended Complaint, reveal the following details.  Plaintiff is a practitioner of the Nation of Islam.  Doc. 8 at 5.  Plaintiff alleges that since February 7, 2014, he has requested and repeatedly been denied the opportunity to speak at weekly Muslim Jumu'ah Prayer services.[4]  *Id.* at 5-6.  Plaintiff states that speaking to other Muslims and leading prayer are mandatory obligations to his faith.  *Id*. at 5.  Plaintiff alleges that Defendants' refusal to allow Plaintiff to speak at the weekly prayer services[5] constitutes violations of his right to free exercise of religion under the First Amendment to the Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  *Id*. at 7.

Plaintiff requests declaratory and injunctive relief so that he may speak at the weekly services.  *Id*.  Plaintiff also requests $200,000 in damages.  *Id*.

## III.  Discussion

### A. Motion to Dismiss Standard

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a

---

[4] Jumu'ah is a congregational prayer that Muslims hold every Friday, just after noon. It is the obligation of every free, adult, sane, resident Muslim who has the ability to attend the prayer. The prayers must be offered in congregation and two sermons should be delivered before the prayers. During the delivery of the sermons and the prayers it is impermissible for anyone to talk. Http://www.islamic-laws.com/friday_prayer.htm, viewed March 3, 2015.

[5] Plaintiff is not alleging that he has been barred from attending Jumu'ah prayer services but only that he has not been allowed to speak at the prayer services.

right, privilege, or immunity secured by the Constitution or laws of the United States.

*Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot

satisfy these requirements, or fails to provide factual allegations in support of the

claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a

right to relief above the speculative level," and complaint "must contain something more

. . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-84 (2009) (*Twombly*

"expounded the pleading standard for all civil actions," and conclusory allegations that

"amount to nothing more than a formulaic recitation of the elements of a constitutional .

. . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint

must allege facts sufficient to move claims "across the line from conceivable to

plausible.").

## B.    Plaintiff's Second Amended Complaint should be dismissed because Plaintiff is a three-striker.

While Defendants have not raised this issue in their Motion to Dismiss, the

Court, nonetheless, is still required to engage in its § 1915(g) screening process before

proceeding. *Riggins v Kuoy*, no. 14-02150CG-M, 2014 WL 3764156, at *1 (S.D. Ala.

July 30, 2014).

Pursuant to 28 U.S.C. § 1915(g) a prisoner is prohibited from bringing an action

*in forma pauperis* if the prisoner previously had three or more actions (or appeals)

dismissed because the claims were frivolous, malicious, or fail to state a claim upon

which relief may be granted.[6]  Plaintiff is a three-striker. This Court in another case

brought by Plaintiff reviewed his litigation history and concluded that Plaintiff was a

three striker because he previously had filed at least six actions that were dismissed

either as frivolous or failing to state a cause of action. *See, Harris v Crews*, no. 4:14-cv-

358-WS-CAS (N.D. Fla. Sept. 16, 2014).  As such, there is no question that if Plaintiff

had filed this case in this Court the Court would dismiss the case without prejudice.[7]

But Plaintiff did not and instead filed the case in state court as a pauper.[8]

Consequently, as a matter of first impression in this district the Court must determine

whether the three-strikes bar should apply where a case is removed to federal court,

and then if so, what action the Court should take.

        There is no consensus among the courts as to whether the three strikes bar

should apply, as here, in a situation where the three striker files in state court and the

---

[6] This section expressly states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a
> civil action or proceeding under this section if the prisoner has, on 3 or
> more prior occasions, while incarcerated or detained in any facility,
> brought an action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious, or fails to state a
> claim upon which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

[7] Because this case concerns a purported violation of RLUIPA—and there is no
suggestion that Plaintiff is subject to imminent physical injury— Plaintiff would not be
able to proceed with the case as a three striker under the imminent physical danger
exception.

[8] The state court record filed in this Court after the case was removed reflects
that the state court on July 7, 2014 entered an order permitting the Plaintiff to proceed
as a pauper upon Plaintiff's showing of indigence. Doc. 1-1, p.2.

action is then removed to federal court. The District Court in the Southern District of Alabama has concluded that the three strikes bar in § 1915(g) should apply even where the three striker files the case in state court and then the action is removed to federal court. *Riggins v Kuoy*, 2014 WL 3764156**;** *Riggins v Corizon Medical Services,* no. 12-0578-WS-M, 2012 WL 5471248 (S.D. Ala. Oct. 19, 2012).

In a similar vein several other districts have concluded that in a situation where an action filed by a prisoner in state court is removed by a defendant to federal court and later dismissed, the dismissal counts as a strike under 28 U.S.C. § 1915(g). *Kotewa v Corrections Corporation of America,* no. 3:10-cv-0923, 2010 WL 5156031, at * 3 (M.D. Tenn. Dec. 14, 2010); *Farmsworth v Washington State Dep't of Corrections,* no. C07-0206-RSM, 2007 WL 1101497 (W.D. Wash. April 9, 2007); *Bartelli v Beard,* no. 3:CV-08-1143, 2008 WL 4363645 (M.D. Pa. Sept. 24, 2008). The reasoning by these court for assessing a strike is that if the plaintiff were allowed to proceed in federal court, "he could continue to file, without paying the filing fee, civil rights actions in state court in order to circumvent the three strike rule which has been applied to him, barring him from filing *in forma pauperis* such actions in federal court pursuant to 28 U.S.C. § 1915(g)." *Kotewa*, at *3 (*citing Bartelli*, at *6.) "The implications of permitting the continuous filings of actions in state court to bypass the three strike rule imposed against [a plaintiff] in federal court would render said rule meaningless and without any teeth." *Bartelli*, at *6.

Other districts, however, have declined to apply § 1915(g) to a removed case

reasoning that because 1915(g) applies only to proceedings *in forma pauperis*—and in a removed action the three striker plaintiff is not requesting permission to proceed *in forma pauperis*—the Court cannot dismiss a removed federal case initiated by a three striker in state court. *Howard v. Braddy*, no. 5:12-CV-404(MTT), 2013 WL 5461680, at *4 (M.D. Ga. Sept. 30, 2013); *see also, Johnson v. Rock*, no. 9:14-CV-815(DNH/ATB), 2014 WL 7410227, at *6-7 (N.D. N.Y. Dec. 31, 2014)(denying motion to remand case because Plaintiff was a three-striker).

The Court concludes that the better reasoned view and the view that makes the most practical sense is the view adopted by the Southern District of Alabama in *Riggins.* As the Court pointed out there "[i]n order to effectuate the intent of Congress in enacting the PLRA, the Court is obligated to apply §1915(g) to prisoner actions that are filed initially with the Court and prisoner actions that are removed to this Court." *Riggins,* at *2.  There are practical consequences of not applying the three strikes rules to cases like this one. As the *Riggins* court observed "[N]ot to apply the 'three-strikes' rule to Plaintiff's removed state court action would allow Plaintiff to accomplish an end-run around the 'threestrikes' rule by filing in state court and hoping, perhaps, for removal of his action to this Court, without paying the required filing fee." *Id.*

Applying the three strikes rule to cases like this one is also consistent with the language of the statute. Section 1915(g) expressly states that "In no event shall a prisoner *bring* a civil action ..." thus suggesting that it applies to any action brought by the prisoner and not just to actions filed by the prisoner in federal court.

Those courts which have refused to apply the three strikes bar to removed actions, *see, e.g. Howard v Braddy*, rationalize that the three strikes bar does not apply because the removed action is not a proceeding *in forma pauperis*. This conclusion ignores the fact that the proceeding is indeed a proceeding where the prisoner is proceeding *in forma pauperis,* albeit permission to do so was obtained first from the state court. There is very little difference, if any, between an *in forma pauperis* action filed by a prisoner in state court that is removed to federal court, and an action initially filed by the prisoner in federal court. Both cases constitute proceedings *in forma pauperis* and to apply different rules to cases started in state court would open a large loophole for abusive prisoner litigants to circumvent the provisions of the PLRA. One of the overriding purposes of the PLRA was to curb abusive prisoner litigation by requiring a prisoner, who has had three cases dismissed as meritless, to pay the full filing fee when his next action is filed. *Dupree v. Palmer*, 284 F. 3d 1234, 1236 (11th Cir. 2002). Indeed, allowing three strikers to bring cases without having to pay the filing fee would make meaningless one of the PLRA's main deterrents to the filing of meritless lawsuits. "Congress placed economic incentives in the PLRA 'that would prompt prisoners to 'stop and think' before filing a complaint,' with '[t]he filing fee [being] small enough not to deter a prisoner with a meritorious claim, yet large enough to deter frivolous claims and multiple filings.'" *Mitchell v. Farcass,* 112 F. 3d 1483, 1488-89 (11th Cir. 1997).  The Court, therefore, concludes that there are compelling reasons for applying the three strikes bar to prisoner actions removed from state court to federal court. Accordingly,

the three strikes bar in § 1915(g) should be applied to the Plaintiff in this case.

The analysis, however, does not end there. The Court must next determine the appropriate remedy in a situation as, here, where a three striker files first in state court and then the Defendant pays the filing fee here when the case is removed.

There is no question that the Court does not have the authority to remand the action. The Eleventh Circuit in *Lloyd v Benton*, 686 F. 3d 1225, 1228 (11th Cir. 2012) squarely held that a district court does not have legal authority to remand a case filed by a three striker where the case has otherwise been removed properly to federal court. *In Lloyd*, the trial court granted a three striker's request to remand a case to state court because the Court concluded that the three striker had circumvented the three strikes provision by filing his removable claims in state court.  On appeal the Eleventh Circuit reversed and remanded the case to the trial court concluding that the trial court did not have legal authority to remand the case because the defendants were entitled to a federal forum under original federal question jurisdiction. Notably, however, the Eleventh Circuit did not conclude that the three strikes bar did not apply and left it up to the trial court to decide what to do next on remand.[9]

---

[9] Rather than dismissing the case because Plaintiff was a three striker, on remand Judge Corrigan dismissed the case as an abuse of the judicial process because Plaintiff lied about the existence of previous lawsuits. *Lloyd v Benton,* case no. 3:10-cv-559-TJC-JRK, Doc. 51 (M.D. Fla. March 6, 2014).

The court in *Riggins*, 2014 WL 3764156, determined that in keeping with the PLRA the complaint should be dismissed without prejudice subject to the right of the plaintiff, there, to pay the $400.00 filing fee within the time for filing an objection to the report and recommendation. The *Riggins* court reasoned that dismissal subject to the right to pay the filing fee was the appropriate relief because "[T]he payment of the filing fee is one of the the PLRA's deterrents because it raised the 'cost to a prisoner of filing a meritless lawsuit.'" *Id.* at *4.

The Court agrees that this remedy makes the most sense. If the Court did not require the Plaintiff in this case to pay the filing fee as a condition of proceeding with the case, every three-striker in the Northern District would have carte blanche to circumvent the PLRA by simply filing the civil rights suit in state court, knowing it is almost a certainty that the Office of the Attorney General would remove the case to federal court.[10]  Accordingly, for these reasons, the Court concludes that pursuant to 28 U.S.C. § 1915(g) because Plaintiff is a three striker this case should be dismissed subject to the right of Plaintiff to pay the $400.00 filing fee within the time frame for filing an objection to this report and recommendation.

---

[10] While the Court is not aware of a source of statistics to point to that would support this statement, antidotically, the undersigned has experienced a rash of civil rights suits assigned to the undersigned in the Tallahassee, Panama City and Gainesville divisions, which were filed by state court prisoners proceeding *pro se*, who were three-strikers, and the cases were removed to federal court by the Attorney General's Office on behalf of Department of Corrections employees.

**C.    Alternatively, Plaintiff's Second Amended Complaint should be dismissed for abuse of the judicial process.**

In their motion to dismiss Defendants argue that Plaintiff's failure to disclose his prior litigation history warrants dismissal for abuse of the judicial process.  The Court's civil rights complaint form, which Plaintiff was directed to utilize for filing his Second Amended Complaint, specifically requires the disclosure of prior litigation history.  Doc. 8 at 3-4.  Defendants argue that Plaintiff failed to disclose on the form, as required, fifty-two (52) previous federal cases Plaintiff had filed.[11]

In his response to the motion to dismiss, Plaintiff states that at the time that he filed his Second Amended Complaint he only had the ability to disclose nine of his previously litigated cases "truthfully."  Doc. 31 at 3.  Plaintiff's basis for excusing his lack of candor is non-descriptive and does not overcome his duty to act in good faith and disclose as much information as possible. *Young v. Sec'y Florida Dept. Of Corr.*, 380 Fed. Appx. 939, 941 (11th Cir. 2010)(an inmate's inability to access his court records to fully answer the questions on the complaint form "did not absolve him of the requirement of disclosing, at a minimum, all of the information that was known to him.").

Plaintiff's Second Amended Complaint, signed under penalty of perjury, is

---

[11] The number of federal cases Plaintiff failed to disclose is actually higher than fifty-two cases. The Court additionally found the following cases, which should have been disclosed: (1) in the Eleventh Circuit Case nos. 11-13964; 12-12853; 12-13837; 12-15264; 14-013806; 14-15240; and 14-15589; (2) in the Northern District of Florida Case nos. 4:01-cv-429-WS and 4:14-cv-669-MW-CAS (removal case); and (3) in the Middle District of Florida Case nos. 8:90-cv-1146-RWN; 8:11-cv-473-JDW-TBM; and 8:11-cv-367-VMC-AEP.

subject to dismissal, even when construed liberally and considered with Plaintiff's response.  The fact that Plaintiff might not have had access to all of his records or the ability to access his court records easily is no excuse for failing to disclose Plaintiff's extensive litigation history. *Jackson v. Florida Dept. of Corrections*, 491 Fed. Appx. 129, 132 (11th Cir. 2012) (holding that it is not an abuse of discretion for a court to sanction an inmate based on his omissions on a court-approved form, which the inmate signed under penalty of perjury); *Shelton v. Rohrs*, 406 Fed. Appx. 340 (11th Cir. 2010)( upholding dismissal for failure to disclose prior cases where plaintiff claimed he did not have access to his materials and did not intend to mislead court).   A complete disclosure of Plaintiff's prior litigation history would assist this Court in determining whether the action should be considered in connection with another action that has either been resolved or is currently pending.  Plaintiff's failure to provide this information "hampers the judicial process." *Hood v. Tompkins*, 197 Fed. Appx. 818, 819 (11th Cir. 2006).

Requiring the Plaintiff to disclose prior cases on the Court's form is not an idle exercise designed to catch an unwary inmate, who legitimately might not be in a position to obtain every identifying detail from all of his prior cases. Rather, this requirement is designed to assist the Court in obtaining information essential to the Court's obligation under the PLRA to screen prisoner cases. In addition to assisting the Court in determining whether a prisoner is a three striker "[T]he information also helps the court to consider whether the action is related to or should be considered in

connection with another action, or whether a holding in another action affects the current action." *Johnson v. Crawson,* no. 5:08cv300/RS/EMT, 2010 WL 1380247, at *2 (N.D. Fla. March 3, 2010) report and recommendation adopted, 2010 WL 1380228 (N.D. Fla. 2010).

Because Plaintiff failed to disclose the identity of more than fifty other cases, the Court's task of identifying other relevant cases was made that much more difficult. While the Court might be inclined to excuse an error in identifying a previous case or an inability to provide the case number for every case, the failure to disclose in this case was wholesale, and in the Court's view was an intentional attempt to obscure the fact that the Plaintiff has been a prolific filer of cases that are marginal at best, as evidenced by the fact that the majority of the cases Plaintiff filed were dismissed during the screening process.

Accordingly, the Court concludes that Plaintiff's wholesale failure to disclose his prior litigation history*,* constitutes an abuse of the judicial process warranting the sanction of dismissal. *Redmon v. Lake Cnty. Sheriff's Office,* 414 F. Appx. 221, 226 (11th Cir. 2011).

**D.    This action also  should be dismissed because Plaintiff failed to exhaust his administrative remedies.**

The Prison Litigation Reform Act ("PLRA"), 42, U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions.  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v.*

*Bock,* 549 U.S. 199, 211 (2002)*.*

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005).  "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

The Florida Administrative Code provides an administrative remedy process for inmates of facilities within the Florida Department of Corrections.  With certain exceptions, inmates initiate the process by submitting an informal grievance.   If the inmate is dissatisfied with the response to the informal grievance, he can submit a formal grievance at the institutional level within 15 days of the response to the informal grievance.  If the inmate is dissatisfied with the response to the formal grievance, he can file an appeal with the Office of the Secretary within 15 days of the response to the formal grievance.[12]

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a

---

[12] *See* Fla. Admin. Code § 33-103.005-008, § 33-103.011(c).

defense of lack of jurisdiction.  *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir. 2008).  Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008).  The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* at 1082.  If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*

Defendants argue that Plaintiff has failed to exhaust his administrative remedies prior to filing suit.  Doc. 28 at 7-9.  Defendants' motion sets forth uncontroverted facts showing that Plaintiff failed to exhaust his administrative remedies as to his claims in this case, and Plaintiff's Second Amended Complaint also includes various attachments that support this conclusion.  Doc. 8 at 8-18.

Plaintiff responded to Defendants' argument by citing a February 28, 2014 denial of an informal grievance.  Doc. 31 at 2.  This denial was in response to an informal grievance that Plaintiff previously filed and in no way supports the position that Plaintiff exhausted his administrative remedies.  Plaintiff followed the Florida Administrative Code by following up on the denial that he cites by drafting a formal grievance which was submitted on March 7, 2014.  Doc. 8 at 11; *See* Fla. Admin. Code § 33-103.005-008, § 33-103.011(c).  After this formal grievance was denied, Plaintiff drafted an

administrative appeal on March 14, 2014, which the Department of Corrections did not receive until March 21, 2014.  Doc. 8 at 9.

The problem is that Plaintiff initiated suit on March 17, 2014.  Doc. 1-2 at 4.  Not only did Plaintiff initiate suit four days before his administrative appeal was even received by the Department of Corrections, he did so well before the Department of Corrections responded and ultimately denied his appeal on April 23, 2014.  Doc. 8 at 8.

Plaintiff also attached a number of other grievances to his Second Amended Complaint to support his claim, but all of the grievances, except one, were drafted well after March 17, 2014.  Doc. 8 at 14-18.  The one grievance that was drafted before March 17, 2014 was informal and unaccompanied by a formal grievance and, thus, does not demonstrate an exhaustion of administrative remedies.  Doc. 8 at 13; *See* Fla. Admin. Code § 33-103.005-008, § 33-103.011(c).[13]

Plaintiff's grievances, filed after initiating suit or those grievances that did not meet the Florida Administrative Code's requirements, are insufficient to satisfy the PLRA's exhaustion requirement.  *See, e.g., Johnson v. Meadows*, 418 F.3d 1152, 1159 (2005) (rejecting prisoner's argument that his untimely grievance satisfied the PLRA"s exhaustion requirement, noting that permitting this circumstance would "run counter to the understanding that 1997e(a) requires prisoners to invoke and fully exhaust all available administrative grievance processes before filing suit.") Thus, Plaintiff's claims

---

[13] Plaintiff filed a "Notice of Additional Evidence" with the court on January 27, 2015.  Doc. 38.  However, this document simply attaches an additional grievance which was subsequently denied.  *Id*. at 3-4.  The grievance was drafted on December 28, 2014 and the appeal was submitted on January 16, 2015, both well past March 17, 2014, the date that Plaintiff filed suit.  *Id*.

are due to be dismissed for failure to exhaust administrative remedies.  *See Turner*,

541 F.3d 1082.  Accordingly, the undersigned recommends that Plaintiff's Second

Amended Complaint be dismissed without prejudice.

**E.     Plaintiff's claims for compensatory and punitive damages are barred by the PLRA, RLUIPA and applicable law**.

Plaintiff's requests for compensatory and punitive damages are due to be

dismissed for three reasons.

First, Plaintiff's claim is based upon RLUIPA, the Religious Land Use and

Institutionalized Persons Act. RLUIPA, was enacted to prevent the government from

imposing substantial burdens on the religious exercise of an institutionalized individual

unless the government can show that the burden was "the least restrictive means of

furthering a compelling governmental interest."  *See* 42 U.S.C. § 2000cc-1.  RLUIPA

allows a plaintiff to bring a private cause of action for "appropriate relief against a

government."  42 U.S.C. § 2000cc-2(a).  These claims can be brought against, *inter

alia*, states, their instrumentalities and officers, and persons acting under color of state

law.  42 U.S.C. § 2000cc-5(4)(A).  Appropriate relief, however, does not include money

damages.  In *Sossamon v. Texas*, 131 S.Ct. 1651 (2011), the United States Supreme

Court interpreted whether "appropriate relief against a government" included money

damages.  The Supreme Court held that it did not, stating that "states, in accepting

federal funding, do not consent to waive their sovereign immunity to private suits for

money damages under RLUIPA because no statute expressly and unequivocally

includes such a waiver."  *Id*. at 1663.

Secondly, under the PLRA Plaintiff cannot sue for compensatory or punitive

damages because an incarcerated prisoner cannot bring an action for mental or emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997(e); *Smith v. Allen,* 502 F.3d 1255, 1271 (11th Cir. 2007) (citing *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.2002)).

Third, to the extent that Plaintiff sues the defendants in their official capacities, Plaintiff's claims are barred under the Eleventh Amendment. The law is well settled that a suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *Will .v Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). Therefore, under the Eleventh Amendment, when state officials are sued for damages in their official capacity, the state officials are immune from suit in federal court. *Jackson v. Georgia Dep't. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

Accordingly, because Plaintiff's claims for damages against the Defendants in their individual capacities is barred under RLUIPA and pursuant to the PLRA, Plaintiff's claims for compensatory and punitive damages are subject to dismissal. And to the extent that Plaintiff is suing the Defendants in their official capacities Plaintiff's claims are barred by the Eleventh Amendment.

**G.    Plaintiff's claims on the basis of respondent superior under § 1983 are not actionable.**

Defendants also argue that to the extent that Plaintiff's claims against Defendants stem from their supervisory responsibilities, rather than their personal involvement with the choice of Jumu'ah Prayer speakers, Plaintiff has failed to state

a claim.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. To be liable, the claimant must show that the official "personally participate[d]" in the act or there was a "causal connection between the actions of [the] supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

As to Defendant Anderson, Plaintiff simply alleges that he filed an informal grievance to Defendant Anderson, which was forwarded to Defendant Mallard, and ultimately denied.  Doc. 8 at 6, 14.  As to Defendant Crews, Plaintiff states that his final appeal was directed to Defendant Crews, and that as Secretary he had an obligation to ensure that inmates' Constitutional Rights were not contravened.  Doc. 8 at 6.

Plaintiff's claims against Defendants Anderson and Crews are insufficient as they do not demonstrate any personal participation regarding the decision of whether or not Plaintiff would speak at Jumu'ah.  *See Cottone*, 326 F.3d at 1360.  Although Plaintiff states that these two Defendants are liable because they were involved with the denial of his grievances, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  Without an affirmative link to the alleged constitutional violations, Defendant Anderson and Defendant Crews cannot be subjected to § 1983 liability.  *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986).

As to Defendant Mallard, Plaintiff's original claim simply states that Defendant

Mallard's response to Plaintiff's grievance referred to the chaplain's rotation of speakers.  Doc. 8 at 5, 10.  Plaintiff elaborated in a response filed on January 20, 2015, stating that Defendant Mallard was Defendant Moore's direct supervisor and, thus, was liable for any harm that allegedly was caused by Defendant Moore.  Doc. 32 at 2-3.  As discussed above, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Gallagher*, 587 F.3d 1063, 1069.

Furthermore, there is no allegation that Defendant Mallard personally participated in Defendant Moore's actions as Defendant Moore already had undertaken these actions when Defendant Mallard received Plaintiff's grievances.  In denying Plaintiff's formal grievance submitted on March 7, 2014, Defendant Mallard wrote, "the choice of speakers is at the discretion of the Chaplain..."  Defendant Mallard also explained that, "review of your complaint shows that the Chaplain is rotating speakers as required."  Doc. 8 at 10, 11.

These statements do not establish a causal connection between Defendant Mallard and the harm that Plaintiff allegedly suffered.  Plaintiff's allegations are conclusory and do not in any way suggest a constitutional violation on behalf of Defendant Mallard.  Accordingly, the Court concludes that Plaintiff's allegations against Anderson, Crews, and Mallard are insufficient to state a cognizable claim under § 1983 and , therefore, Defendants' motion to dismiss should be granted.

### IV. Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.  This action should be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g). Plaintiff is entitled to pay the $400.00 filing fee before the deadline for filing objections to this report and recommendation. In the event Plaintiff does so, this case should not be dismissed under 28 U.S.C. § 1915(g).

2.   Independent of whether the case should be dismissed pursuant to 28 U.S.C. § 1915(g), Defendants' Motion to Dismiss (Doc. 28) should be **GRANTED** for abuse of the judicial process and for failure to state claims against the Defendants.  Further, all pending motions should be terminated, and the case should be closed.

**IN CHAMBERS** at Gainesville, Florida this 11th day of March  2015.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge



## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**